IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN WATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-327-SMY-DGW |
| | ) |
| 84 LUMBER COMPANY et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Steven Watts brings this action alleging he sustained injuries as a result of exposure to asbestos-containing products attributable to Goodyear Tire & Rubber Company ("Goodyear") and various other defendants (*see* Doc. 2-1). Pending before the Court is the Motion for Summary Judgment filed by Goodyear (Doc. 360). For the following reasons, the motion is **DENIED**.

# BACKGROUND

Plaintiff alleges he contracted lung cancer as a result of inhaling airborne asbestos fibers during the course of his employment in the 1960s and 1970s (Doc. 2-1). He asserts he was exposed to asbestos-containing products manufactured by Goodyear during his service as an enlisted officer in United States Navy from 1970 to 1975. *Id*. Plaintiff enlisted in the Navy on February 2, 1970 (Doc. 374-2, p. 38). Following basic training, Plaintiff served on the U.S.S. Surfbird ("Surfbird") for one year. *Id*. at pp. 41-42. After serving on the Surfbird, Plaintiff transferred to the U.S.S. Hector ("Hector"), a repair ship. *Id*. at p. 44. Plaintiff served aboard the Hector for approximately two years. *Id*.

While aboard both ships, Plaintiff's duties included replacing gaskets on pumps, valves, and boilers in the engine rooms of the ships (Doc. 374-2, pp. 42-45).  He changed gaskets on valves countless number of times.  *Id*. at pp. 65-66.  Regarding pumps, Plaintiff testified during his deposition that 95% of his work on pumps involved changing flange gaskets.  *Id*. at p. 58.  He estimated changing flange gaskets on pumps hundreds of times.  *Id*. at p. 66.  Plaintiff further testified that the replacement gaskets were manufactured by Excelsior, Goodyear, and Durabla.  *Id*. at p. 76.  He referred to the gaskets as "asbestos gaskets." *Id*.

The process of removing a gasket was similar on valves, pumps, and boilers (Doc. 374-2, pp. 58-59).  Plaintiff described the old gaskets as "falling apart and cracked, dried." *Id*. at p. 50.  He used a scraper or chisel to remove old flange gaskets.  *Id*. at pp. 60, 70.  The removal process created dust which went airborne.  *Id*. at pp. 49, 59, 71.  The replacement gaskets were either prefabbed or cut from a sheet.  *Id*. at pp. 50, 59, 72.  When using sheet gaskets, Plaintiff cut a square approximately the same size of the flange, poked holes in it where the bolts went, used a razor to cut the gasket out and then trimmed it.  *Id*.  This process also created visible dust which Plaintiff inhaled.  *Id*.  Prefabbed gaskets came in packaging.  *Id*.  Plaintiff testified the packaging always contained dust, which he inhaled.  *Id*.

Until 1969, Goodyear manufactured both asbestos-containing sheet gasket material and sheet gasket material that did not contain asbestos (Doc. 360-2).  Goodyear asserts it stopped manufacturing asbestos-containing sheet gaskets material for economic reasons in 1969 (*see* Doc. 360-2).  However, records indicate that Goodyear sold asbestos-containing gaskets to the Navy during the relevant time period (*see* Doc. 374-5).  The gaskets were marked either "Goodyearite" or had a "Durabla" trademark (Doc. 374-2).  In 1969, production of the asbestos-containing gasket material was transferred from Goodyear's Ohio facilities to Goodyear Canada,

2

Inc., which continued to manufacture the asbestos-containing gasket material until 1973 (Doc. 374-2).

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also RuffinThompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. As the Seventh Circuit has noted, summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

To prevail on a negligence claim in an asbestos case, the plaintiff must establish that the defendant's asbestos was a "cause" of the plaintiff's injuries. *Thacker v. UNR Industries, Inc.,* 603 N.E.2d 449, 455 (Ill. 1992). In cases such as this, plaintiffs often rely heavily on circumstantial evidence in order to show causation. *Id.* at 456. In *Thacker,* the Supreme Court of Illinois articulated what is understood to be the "frequency, regularity and proximity test." As prescribed by this test, in order to have the question of legal causation submitted to the jury, the

plaintiff must show (1) he regularly worked in an area where the defendant's asbestos was frequently used, and (2) the plaintiff did, in fact, work sufficiently close to an area where the defendant's asbestos was used, so as to come into contact with the defendant's product. *Id.* at 457. A plaintiff cannot present his case to the jury unless there is sufficient evidence for the jury to conclude the defendant's conduct was a cause of the injury. *Johnson v. Owens–Corning Fiberglass Corp.,* 672 N.E.2d 885, 890 (Ill. App. Ct. 1996). Moreover, a plaintiff must prove more than just minimal contact with a defendant's asbestos product. *Id.*

In *Thacker,* the Court found that the plaintiff satisfied the "frequency" and "regularity" prongs of this test by establishing that, during the eight years the decedent worked at the facility at issue, approximately three percent of the total dust in the plant was attributable to the defendant. *Id.* at 459. Moreover, the Court determined that the plaintiff satisfied the "proximity" element of this test by establishing that no matter where in the plant the defendant's asbestos was processed, due to "fiber drift," once inside the plant, the defendant's asbestos necessarily contributed to the dust in the plant air. *Id.* In *Thacker*, the Court made this finding although the plaintiff had not shown that he specifically handled any asbestos-product of the defendant. *Id.* at 453. The Court finds the reasoning in *Thacker* instructive in this case.

Goodyear contends there is no evidence that Plaintiff ever worked with or around asbestos-containing products associated with Goodyear. The Court disagrees. Plaintiff has provided evidence establishing "frequency, regularity, and proximity" to Goodyear asbestos-containing products. Plaintiff specifically recalled using Goodyear and Durabla prefabbed and sheet gaskets during his naval service. He described replacing countless number of gaskets on pumps, valves, and boilers. The process of installing gaskets created dust which he inhaled.

Plaintiff's testimony with respect to Goodyear gaskets establishes more than just minimal

contact.  For approximately three years, Plaintiff regularly maintained, repaired and installed gaskets.  Goodyear admits that it manufactured asbestos-containing gaskets.  Although Goodyear contends it ceased manufacturing asbestos-containing gaskets in 1969, records indicate that Goodyear products were aboard naval vessels as late as 1973.  The Court finds that there are material factual issues remaining in this case.  Accordingly, Goodyear's Motion for Summary Judgment is **DENIED**.

    **IT IS SO ORDERED.**

    **DATED:  January 28, 2016**

    **s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**